E-FILED
Tuesday, 22 October, 2024 02:53:28 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

FILED
SIXTH JUDICIAL CIRCUIT

7/9/2024 6:59 PM
By: AL

Susan W. McGrath
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY

| | |
|---|---|
| KATINA WILCHER, ) <br> ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> CHAMPAIGN UNIT 4 SCHOOL DISTRICT, ) <br> the BOARD OF EDUCATION OF ) <br> CHAMPAIGN UNIT 4 SCHOOL DISTRICT, ) <br> SHEILA BOOZER, and KEN KLEBER, ) <br> ) <br> *Defendants.* ) | 2024LA000115 <br><br> Case No. _____ <br><br> Jury Trial Demand |

## COMPLAINT

The plaintiff, Katina Wilcher, by her counsel, brings the following complaint against defendants Champaign Unit 4 School District, the Board of Education of Champaign Unit 4 School District, Sheila Boozer, and Kenneth Kleber for violation of the Illinois Human Rights Act and the Family and Medical Leave Act.

## THE PARTIES

1. The plaintiff, Katina Wilcher, is a Black female who is 51 years old. She began working for CSD in August 2001 as a School Social Worker. In October 2017, she was promoted to Director of Student, Family, and Community Engagement. In July 2021, she was promoted to Director of Leading Individuals and Families to Transformation ("LIFT"). On April 24, 2023, after engaging in protected activity, Ms. Wilcher was demoted to Social Worker, which is her current role.

2. Defendant Champaign Unit 4 School District ("CSD") is a large public school district serving approximately 10,000 students at 24 schools and programs in grades Pre-K through 12 in Champaign County, IL.

3. Defendant Board of Education of CSD is an elected board of directors that, among other things, makes employment decisions regarding hiring.

4. Defendant Sheila Boozer is the Superintendent of CSD, who, among other things, makes employment recommendations and decisions regarding hiring.

5. Defendant Ken Kleber is the Assistant Superintendent of Human Resources and Organizational Effectiveness for CSD, who, among other things, makes employment recommendations and decisions regarding hiring.

## JURISDICTION AND VENUE

6. This court has jurisdiction under 775 ILCS 5/7A-102 (C-1). Prior to bringing this lawsuit, the Plaintiff exhausted her administrative remedies, having filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") (Charge No. 2023SE1707) on May 23, 2023. The IDHR issued a Notice of Dismissal for Lack of Substantial Evidence on April 9, 2024. The plaintiff brought this case within 90 days of receiving the Notice of Dismissal.

7. The venue is appropriate because the defendants engaged in their official activities within this court's judicial district, and the claims giving rise to the above-captioned proceeding occurred within this court's judicial district.

## FACTUAL BASIS OF CLAIMS

8. CSD hired Katina Wilcher in August 2001 as a School Social Worker.

9. In October 2017, she was promoted to Director of Student, Family, and Community Engagement.

10. In July 2021, she was promoted to Director of the Leading Individuals and Families to Transformation ("LIFT").

11. As director of LIFT, Ms. Wilcher earned an annual salary of $106,000.00 and was eligible for a 4% annual increase.

12. Approximately 20 years ago, Ms. Wilcher was in a relationship with Scott Savage, who was working as a teacher at a CSD school at the time of their relationship.

13. Mr. Savage subjected Ms. Wilcher to severe physical and emotional abuse and stalked her at home and work. The relationship ended in 2003.

14. Mr. Savage was dismissed from CSD and left to teach elsewhere for several years, but he was hired back as a teacher and Dean of Students at CSD's Centennial High School in 2000. In 2006, after an order of protection was filed against him by his current girlfriend, he again left Centennial to teach elsewhere.

15. Two other women also sought orders of protection against Mr. Savage during the same time period.

16. In April 2022, Ms. Wilcher learned that Scott Savage was one of two finalists for the position of Principal of CSD's Centennial High School.

17. Ms. Wilcher was often at Centennial because she ran a student support group there. She also regularly met with all of the principals of CSD's schools.

18. Ms. Wilcher immediately contacted CSD's Director of Human Resources, Dan Casillas, and told him in a phone call that she had concerns about Savage, that he had been abusive to her when they were in a relationship, and that it was extremely upsetting to her that Savage could be returning to CSD.

19. That same day, Ms. Wilcher was called into a meeting with defendants Savage and Kleber. She told them that Savage had abused her when they were in a relationship and that she did not believe it was appropriate for him to be considered for Principal of a school.

3

20. Kleber and Boozer dismissed her concerns and interrogated her, stating that they were fully vetting Savage by doing background checks and reference checks. They told her that Savage was their top candidate.

21. Ms. Wilcher engaged in protected activity in bringing the abuse to the attention of CSD.

22. In April 2022, CSD hired Scott Savage as Principal of Centennial High School, with full knowledge of his history of allegedly abusing women.

23. Ms. Wilcher requested that she not be required to see or associate with Savage.

24. Defendants required her to attend meetings in which he was present.

25. Ms. Wilcher had physiological reactions to the presence of Savage. She became physically ill when he was present.

26. Savage's presence created a hostile and intimidating environment for Ms. Wilcher.

27. She had to discontinue her group program at Centennial High School.

28. She suffered extreme emotional distress as a result of his presence.

29. Ms. Wilcher filed formal complaints with the Illinois Department of Human Rights in October 2021 and May 2022, which constitute protected activity.

30. In December 2022, Ms. Wilcher underwent surgery to repair damage from an earlier serious injury that had limited her mobility. She took leave under the Family and Medical Leave Act ("FMLA") to recover.

31. While she was on FMLA leave, her immediate supervisor, Angela Ward, refused to allow her to communicate with her coworkers.

32. In April 2023, while Ms. Wilcher was still recovering and was still on FMLA leave, Ms. Wilcher was called into Kleber's office and was demoted to the role of Social Worker.

33. Defendants' reason for the demotion – performance issues – is a pretext for retaliation.

34. Ms. Wilcher's performance reviews have always been positive. She has never been subjected to discipline and has never been placed on a performance improvement plan.

35. As a Social Worker, Ms. Wilcher's pay decreased from $106,000 to $84,000.00.

36. Ms. Wilcher was demoted in violation of the Illinois Human Rights Act and the FMLA.

37. In April 2023, Savage was caught on camera grabbing and getting into a physical altercation with a female student. The footage was aired on the local news, and Centennial parents called for his termination. See https://www.youtube.com/watch?v=-EUbZeG3On8&ab_channel=WCIANews (last visited July 9, 2024).

38. He resigned in disgrace shortly thereafter.

**COUNT I**

**Retaliation in violation of the
Illinois Human Rights Act,
775 ILCS 5/6-101, *et seq.***

39. Ms. Wilcher realleges each of the paragraphs set forth above.

40. Under the Illinois Human Rights Act, it is a violation to:

> [r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment, sexual harassment in elementary, secondary, and higher education, or discrimination based on arrest record, citizenship status, or work authorization status in employment under Articles 2, 4, 5, and 5A, because he or she has made a charge, filed a complaint, testified, assisted, or participated

in an investigation, proceeding, or hearing under this Act, or because he or she has requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by this Act . . . 775 ILCS 5/6-101(Q).

41. As described above, Ms. Wilcher engaged in protected activity by opposing and reporting conduct by defendants that she reasonably believed was unlawful under the IHRA.

42. After she complained, the defendants continued the same course of action.

43. After she complained, the defendants retaliated against her by, among other things, forcing her to work with her abuser and demoting her.

44. Defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Wilcher's rights. Exemplary damages are warranted to prevent similar unlawful conduct by defendants.

45. Ms. Wilcher was damaged by the defendants' conduct.

## COUNT II

### Violation of the FMLA and retaliation in violation of the FMLA, 29 U.S.C. §§ 2601, *et seq.*

46. Ms. Wilcher realleges each of the paragraphs set forth above.

47. The FMLA, 29 U.S.C. § 2615(a)(1), makes it unlawful for employers "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title [29 USCS §§ 2611, et seq.]."

48. Further, the FMLA, 29 USC § 2615(a)(2), makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by it.

49. An employee who returns from FMLA leave is entitled to be restored to the same or an equivalent job with equivalent pay, benefits, and other terms and conditions of employment.

50. Defendant CSD is an "employer" within the meaning of the FMLA, and Ms. Wilcher is an "employee" within the meaning of the FMLA.

51. Defendants demoted Ms. Wilcher while she was on FMLA leave.

52. Defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Wilcher's rights. Exemplary damages are warranted to prevent similar unlawful conduct by defendants.

53. Ms. Wilcher was damaged by the defendants' conduct.

## COUNT III

### Negligent hiring and Retention

54. Ms. Wilcher realleges each of the paragraphs set forth above.

55. Defendants knew or should have known that Savage was unfit for the position so as to create a danger of harm to third persons.

56. Such particular unfitness was known, or should have been known, at the time of the Savage's hiring and during his retention.

57. Because of Savage's hiring and retention, Ms. Wilcher suffered emotional distress.

58. Savage's unfitness proximately caused Ms. Wilcher's injuries.

### DEMAND FOR JURY TRIAL

59. Ms. Wilcher demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, the plaintiff, Katina Wilcher, prays for relief from the defendants as to all counts of her Complaint as follows:

A. Payment of Ms. Wilcher's lost past and future wages and benefits, including lost retirement contributions, reduction in pension payments, vacation and sick time, and raises;

B. Compensatory damages, emotional and mental distress damages, punitive damages, statutory damages, liquidated damages, interest, and civil penalties;

C. Payment of Ms. Wilcher's attorneys' fees and all costs of litigation, including statutory fees and expert witness fees;

D. Pre- and post-judgment interest; and

E. All other relief, whether legal or equitable, that this Court may deem appropriate.

Respectfully submitted this 9th day of July, 2024

/s Jamie S. Franklin
Jamie S. Franklin
C-K Law Group
565 West Adams Street, Suite 600
Chicago, IL 60661
(312) 906-5048 (direct)
(773) 696-1478 (fax)
(312) 498-5143 (mobile)
jfranklin5@kentlaw.iit.edu

8