IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| KATINA WILCHER,<br><br>                Plaintiff,<br><br>v.<br><br>CHAMPAIGN UNIT 4 SCHOOL DISTRICT, the BOARD OF EDUCATION OF CHAMPAIGN UNIT 4 SCHOOL DISTRICT, SHEILA BOOZER, and KEN KLEBER,<br><br>                Defendants. | Case No. 2:24-cv-02240-CSB-EIL |

**DEFENDANTS' ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendants CHAMPAIGN COMMUNITY UNIT SCHOOL DISTRICT NO. 4 ("the District"), BOARD OF EDUCATION OF CHAMPAIGN COMMUNITY UNIT SCHOOL DISTRICT NO. 4 ("the Board"), SHELIA BOOZER, and KEN KLEBER, by and through their attorneys, Franczek P.C., hereby respond to Plaintiff's Complaint as follows:

**The Parties**

1. The plaintiff, Katina Wilcher, a Black female who is 51 years old. She began working for CSD in August 2001 as a School Social Worker. In October 2017, she was promoted to Director of Student, Family and Community Engagement. In July 2021, she was promoted to Director of Leading Individuals and Families to Transformation ("LIFT"). On April 24, 2023, after engaging in protected activity, Ms. Wilcher was demoted to Social Worker, which is her current role.

**Answer:**

Defendants admit the allegations in the first four sentences of Paragraph 1. Defendants admit that Plaintiff was reassigned to a School Social Worker position for the 2023-24 school year but denies all remaining allegations in the fifth sentence of Paragraph 1.

2. Defendant Champaign Unit 4 School District ("CSD") is a large public school district serving approximately 10,000 students at 24 schools and programs in grades Pre-K through 12 in Champaign County, IL.

**Answer:**

Defendants admit the allegations in Paragraph 2.

3. Defendant Board of Education of CSD is an elected board of directors that, among other things, makes employment decisions regarding hiring.

**Answer:**

Defendants admit the allegations in Paragraph 3.

4. Defendant Sheila Boozer is the Superintendent of CSD, who, among other things, makes employment recommendations and decisions regarding hiring.

**Answer:**

Defendants admit the allegations in Paragraph 4.

5. Defendant Ken Kleber is the Assistant Superintendent of Human Resources and Organizational Effectiveness at CSD, who, among other things, makes employment recommendations and decisions regarding hiring.

**Answer:**

Defendants admit the allegations in Paragraph 5.

### Jurisdiction and Venue

6. This court has jurisdiction under 775 ILCS 5/7A-102(C-1). Prior to bringing this lawsuit, the Plaintiff exhausted her administrative remedies, having filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") (Charge No. 2023SE1707) on May 23, 2023. The IDHR issued a Notice of Dismissal for Lack of Substantial Evidence on April 9, 2024. The plaintiff brought this case within 90 days of receiving the Notice of Dismissal.

**Answer:**

In answer to the first sentence of Paragraph 6, Defendants admit that this case was properly removed to federal court and that this federal court has supplemental jurisdiction over Plaintiff's claims under the Illinois Human Rights Act. Upon information and belief, Defendants admit the

allegations in the second and fourth sentences of Paragraph 6. Defendants admit that the Illinois Department of Human Rights issued a Notice of Dismissal for Lack of Substantial Evidence on April 10, 2024.

7. The venue is appropriate because the defendants engaged in their official activities within this court's judicial district, and the claims giving rise to the above-captioned proceeding occurred within this court's judicial district.

**Answer:**

Defendants admit that venue is proper in the Central District of Illinois, Urbana Division, because Defendants are located in this judicial district and Plaintiff was employed with Defendant District in this judicial district but deny all remaining allegations in Paragraph 7.

## Factual Basis of Claims

8. CSD hired Katina Wilcher in August 2001 as a School Social Worker.

**Answer:**

Defendants admit the allegations in Paragraph 8.

9. In October 2017, she was promoted to Director of Student, Family and Community Engagement.

**Answer:**

Defendants admit the allegations in Paragraph 9.

10. In July 2021, she was promoted to Director of the Leading Individuals and Families to Transformation ("LIFT").

**Answer:**

Defendants admit that in 2021, Plaintiff was hired to the position of Director of the LIFT Program but deny the remaining allegations in Paragraph 10.

11. As director of LIFT, Ms. Wilcher earned an annual salary of $106,000.00 and was eligible for a 4% annual increase.

**Answer:**

Defendants admit that Plaintiff's annual salary for the 2022-23 school year was $106,687 and raises were awarded in accordance with Board policy. Defendants deny all remaining allegations in Paragraph 11.

12.     Approximately 20 years ago, Ms. Wilcher was in a relationship with Scott Savage, who was working as a teacher at a CSD school at the time of their relationship.

**Answer:**

Defendants are without sufficient knowledge to form a belief as to the accuracy of the allegations in Paragraph 12 and therefore deny them.

13.     Mr. Savage subjected Ms. Wilcher to severe physical and emotional abuse and stalked her at home and work. The relationship ended in 2003.

**Answer:**

Defendants are without sufficient knowledge to form a belief as to the accuracy of the allegations in Paragraph 13 and therefore deny them.

14.     Mr. Savage was dismissed from CSD and left to teach elsewhere for several years, but he was hired back as a teacher and Dean of Students at CSD's Centennial High School in 2000. In 2006, after an order of protection was filed against him by his current girlfriend, he again left Centennial to teach elsewhere.

**Answer:**

Defendants admit that Savage held a part-time position with the District for the Spring 1998 semester from which he was separated as part of a reduction in force; that Savage was rehired as a full-time teacher in 2000; that Savage became a dean in 2004; and that Savage resigned in 2006. Defendants deny all remaining allegations in Paragraph 14.

15.     Two other women also sought orders of protection against Mr. Savage during the same time period.

**Answer:**

Defendants are without sufficient knowledge to form a belief as to the accuracy of the allegations in Paragraph 15 and therefore deny them.

16. In April 2022, Ms. Wilcher learned that Scott Savage was one of two finalists for the position of Principal at CSD's Centennial High School.

**Answer:**

Defendants are without sufficient knowledge to form a belief as to the accuracy of the allegations in Paragraph 16 and therefore deny them.

17. Ms. Wilcher was often at Centennial because she ran a student support group there. She also regularly met with all the principals of CSD's schools.

**Answer:**

Defendants admit that Plaintiff's job duties included visits to Centennial but deny all remaining allegations in Paragraph 17.

18. Ms. Wilcher immediately contacted CSD's Director of Human Resources, Dan Casillas, and told him in a phone call that she had concerns about Savage, that he had been abusive to her when they were in a relationship, and that it was extremely upsetting to her that Savage could be returning to CSD.

**Answer:**

Defendants admit the allegations in Paragraph 18.

19. That same day, Ms. Wilcher was called into a meeting with defendants Savage [sic] and Kleber. She told them that Savage had abused her when they were in a relationship and that she did not believe it was appropriate for him to be considered for Principal of a school.

**Answer:**

Defendants admit that Plaintiff met with Defendants Boozer and Kleber on or about April 4, 2022 during which Plaintiff conveyed that she had a prior relationship with Savage twenty years prior and that Savage had been emotionally abusive but deny all remaining allegations in Paragraph 19.

20.     Kleber and Boozer dismissed her concerns and interrogated her, stating that they were fully vetting Savage by doing background checks and reference checks. They told her that Savage was their top candidate.

**Answer:**

Defendants admit that Savage was required to undergo background and reference checks as part of Defendant District's standard hiring procedures but deny all remaining allegations in Paragraph 20.

21.     Ms. Wilcher engaged in protected activity in bringing the abuse to the attention of CSD.

**Answer:**

Defendants deny the allegations in Paragraph 21.

22.     In April 2022, CSD hired Scott Savage as Principal of Centennial High School, with full knowledge of his history of allegedly abusing women.

**Answer:**

Defendants admit that Scott Savage was hired as Principal of Centennial High School in April, 2022 but deny all remaining allegations in Paragraph 22. Answering further, Defendants state that the Illinois Human Rights Act prohibits employers from taking adverse employment actions based on an individual's arrest record or allegations made against an individual short of criminal conviction.

23.     Ms. Wilcher requested that she not be required to see or associate with Savage.

**Answer:**

Defendants admit the allegations in Paragraph 23.

24.     Defendants required her to attend meetings in which he was present.

**Answer:**

Defendants admit the allegations in Paragraph 24. Answering further, Defendants state that Plaintiff was excused from attending Principals' meetings and directed to send another employee in her stead. The District offered to instruct Savage not to attend Healing Spaces group meetings at Centennial High School. For administrative professional development meetings, which occur approximately once a month, Plaintiff was instructed to sit with Dr. Angela Ward so as to avoid contact with Savage.

25. Ms. Wilcher had physiological reactions to the presence of Savage. She became physically ill when he was present.

**Answer:**

Defendants are without sufficient knowledge to form a belief as to the accuracy of the allegations in Paragraph 25 and therefore deny them.

26. Savage's presence created a hostile and intimidating environment for Ms. Wilcher.

**Answer:**

Defendants deny the allegations in Paragraph 26.

27. She had to discontinue her group program at Centennial High School.

**Answer:**

Defendants deny the allegations in Paragraph 27.

28. She suffered extreme emotional distress as a result of his presence.

**Answer:**

Defendants deny the allegations in Paragraph 28.

29. Ms. Wilcher filed formal complaints with the Illinois Department of Human Rights in October 2021 and May 2022, which constitute protected activity.

**Answer:**

3363022.5

Defendants admit that Plaintiff filed charges of discrimination with the Illinois Department of Human Rights on June 13, 2022 and November 4, 2022 but deny all remaining allegations, including any allegation that said charges had merit.

30. In December 2022, Ms. Wilcher underwent surgery to repair damage from an earlier serious injury that had limited her mobility. She took leave under the Family and Medical Leave Act ("FMLA") to recover.

**Answer:**

Defendants admit that Plaintiff took FMLA leave in December, 2022 but is without sufficient information to form a belief as to the remaining allegations in Paragraph 30 and therefore deny them.

31. While she was on FMLA leave, her immediate supervisor, Angela Ward, refused to allow her to communicate with her coworkers.

**Answer:**

Defendants admit that the District enforced its FMLA policy of not permitting employees to perform work while on approved leave but deny all remaining allegations in Paragraph 31.

32. In April 2023, while Ms. Wilcher was still recovering and was still on FMLA leave, Ms. Wilcher called into Kleber's office and was demoted to the role of Social Worker.

**Answer:**

Defendants admit that Kleber asked to meet with Plaintiff to discuss her request for additional leave and that during that meeting, Plaintiff was informed that she was being reassigned as a social worker but deny all remaining allegations in Paragraph 32. Answering further, Defendants state that Plaintiff's FMLA leave expired on March 6, 2023.

33. Defendants' reason for the demotion – performance issues – is a pretext for retaliation.

**Answer:**

Defendants deny the allegations in Paragraph 33.

34. Ms. Wilcher's performance reviews have always been positive. She has never been subjected to discipline and has never been placed on a performance improvement plan.

**Answer:**

Defendants deny the allegations in Paragraph 34.

35. As a Social Worker, Ms. Wilcher's pay decreased from $106,000 to $84,000.00.

**Answer:**

Defendants admit that Plaintiff's salary as a social worker was $84,349 but deny all remaining allegations in Paragraph 35.

36. Ms. Wilcher was demoted in violation of the Illinois Human Rights Act and the FMLA.

**Answer:**

Defendants deny the allegations in Paragraph 36.

37. In April 2023, Savage was caught on camera grabbing and getting into a physical altercation with a female student. The footage was aired on the local news, and Centennial parents called for his termination. See https://www.youtube.com/watch?v=EUbZeG3On&&ab_channel=WCIANews (last visited July 9, 2024).

**Answer:**

Defendants admit that security video captured Savage physically interacting with a non-compliant student and further, upon information and belief, that the video was shown by a local news channel, but deny remaining allegations in Paragraph 37.

38. He resigned in disgrace shortly thereafter.

**Answer:**

Defendants admit that Savage resigned his employment but deny all remaining allegations in Paragraph 38.

## Count I
## Retaliation in Violation of the Illinois Human Rights Act,
## 775 ILCS 5/6-101, *et seq.*

39.     Ms. Wilcher realleges each of the paragraphs set forth above.

**Answer:**

Defendants incorporate by reference their Answers to Paragraphs 1 through 38, inclusive, as though fully set forth herein.

40.     Under the Illinois Human Rights Act, it is a violation to:

[r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment, sexual harassment in elementary, secondary, and higher education, or discrimination based on arrest record, citizenship status, or work authorization status in employment under Articles 2, 4 5, and 5A, because he or she has made a charge, filed a complaint, testified, assisted or participated in an investigation, proceeding or hearing under this Act, or because he or she has requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by this Act . . . 775 ILCS 5/6-101(Q).

**Answer:**

Defendants admit that Paragraph 40 recites one of the protections afforded by the Illinois Human Rights Act but deny that they violated the cited provision.

41.     As described above, Ms. Wilcher engaged in protected activity by opposing and reporting conduct by defendants that she reasonably believed was unlawful under the IHRA.

**Answer:**

Defendants deny the allegations in Paragraph 41.

42.     After she complained, the defendants continued the same course of action.

**Answer:**

Defendants deny the allegations in Paragraph 42.

43.     After she complained, the defendants retaliated against her by, among other things, forcing her to work with her abuse and demoting her.

**Answer:**

Defendants deny the allegations in Paragraph 43.

44. Defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Wilcher's rights. Exemplary damages are warranted to prevent similar unlawful conduct by defendants.

**Answer:**

Defendants deny the allegations in Paragraph 44.

45. Ms. Wilcher was damaged by the defendants' conduct.

**Answer:**

Defendants deny the allegations in Paragraph 45.

### Count II
### Violation of the FMLA and retaliation of the FMLA
### 29 U.S.C. §§ 2601, *et seq.*

46. Ms. Wilcher realleges each of the paragraphs set forth above.

**Answer:**

Defendants incorporate by reference their Answers to Paragraphs 1 through 45, inclusive, as though fully set forth herein.

47. The FMLA 29 U.S.C. §2615(a)(1), makes it unlawful for employers "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title [29 USCS §§ 2611, et seq.]."

**Answer:**

Defendants admit that Paragraph 47 recites one of the protections afforded by the FMLA but deny that they violated the cited provision.

48. Further, the FMLA, 29 U.S.C. §2615(a)(2), makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by it.

11

3363022.5

**Answer:**

Defendants admit that Paragraph 48 recites one of the protections afforded by the FMLA but deny that they violated the cited provision.

49. An employee who returns from FMLA leave is entitled to be restored to the same or an equivalent job with equivalent pay, benefits and other terms and conditions of employment.

**Answer:**

Defendants admit that Paragraph 49 recites the general job restoration protection afforded by the FMLA but state that the FMLA contains exceptions to that protection.

50. Defendant CSD is an "employer" within the meaning of the FMLA, and Ms. Wilcher is an "employee" within the meaning of the FMLA.

**Answer:**

Defendants admit the allegations in Paragraph 50.

51. Defendants demoted Ms. Wilcher while she was on FMLA leave.

**Answer:**

Defendants deny the allegations in Paragraph 51.

52. Defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Wilcher's rights. Exemplary damages are warranted to prevent similar unlawful conduct by defendants.

**Answer:**

Defendants deny the allegations in Paragraph 52.

53. Ms. Wilcher was damaged by the defendants' conduct.

**Answer:**

Defendants deny the allegations in Paragraph 53.

**Count III**
**Negligent Hiring and Retention**

54. Ms. Wilcher realleges each of the paragraphs set forth above.

**Answer:**

Defendants incorporate by reference their Answers to Paragraphs 1 through 53, inclusive, as though fully set forth herein.

55. Defendants knew or should have known that Savage was unfit for the position so as to create a change or harm to third persons.

**Answer:**

Defendants deny the allegations in Paragraph 55.

56. Such particular unfitness was known, or should have been known, at the time of the [sic] Savage's hiring and during his retention.

**Answer:**

Defendants deny the allegations in Paragraph 56.

57. Because of Savage's hiring and retention, Ms. Wilcher suffered emotional distress.

**Answer:**

Defendants deny the allegations in Paragraph 57.

58. Savage's unfitness proximately caused Ms. Wilcher's injuries.

**Answer:**

Defendants deny the allegations in Paragraph 58.

**Demand for Jury Trial**

59. Ms. Wilcher demands a trial by jury.

**Answer:**

Paragraph 59 is a jury demand to which no answer is required.

**Prayer for Relief**

Wherefore, the plaintiff, Katina Wilcher, prays for relief from the defendants as to all counts of her Complaint as follows:

3363022.5

    A.    Payment of Ms. Wilcher's lost past and future wages and benefits, including lost retirement contributions, reduction in pension payments, vacation and sick time, and raises;

    B.    Compensatory damages, emotional and mental distress damages, punitive damages, statutory damages, liquidated damages, interest and civil penalties;

    C.    Payment of Ms. Wilcher's attorneys' fees and all costs of litigation, including statutory fees and expert witness fees;

    D.    Pre- and post-judgment interest; and

    E.    All other relief, whether legal or equitable, that this Court may deem appropriate.

**Answer:**

Defendants deny that Plaintiff is entitled to any of the relief sought in her Complaint.

## **AFFIRMATIVE DEFENSES**

1.    Defendant Board has a variety of effectively communicated procedures for employees such as Plaintiff to raise concerns regarding harassment or discrimination based on gender or other protected characteristics. Employees are encouraged to raise complaints through these procedures if they believe they have been the victim of unlawful harassment. Defendant Board prohibits retaliation against those employees who raise complaints of discrimination. Plaintiff was aware of these policies.

2.    Although Defendant Board denies that any actionable conduct occurred, Plaintiff's claims are barred and/or any recovery of damages is precluded to the extent Plaintiff failed to take advantage of preventive and/or corrective opportunities provided or to otherwise avoid any alleged harm, and Defendant Board exercised reasonable care to prevent any alleged harassment and took timely and appropriate action to address any complaints reported.

3.    Defendants deny that they violated any federal or state law, and specifically deny that any alleged violations were willful.

4. Defendants state that any acts or omissions alleged by Plaintiff that give rise to this action were reasonable and not undertaken with reckless disregard to whether such acts or omissions violated federal or state law.

5. Defendants at all times acted in good faith and had reasonable grounds for believing that their alleged actions and omissions were in compliance with federal and state law. Accordingly, no punitive damages or penalties should be awarded because the alleged actions or omissions were undertaken in good faith, without malice or intent to injury Plaintiff, and do not constitute willful violations.

6. To the extent Plaintiff seeks to recover lost income from Defendants, upon information and belief, Plaintiff has failed to mitigate her damages by, among other things, failing to make reasonable efforts to secure alternative sources of income.

7. Alternatively, to the extent Plaintiff has mitigated her damages, any damages awarded to Plaintiff must be reduced by the amount of Plaintiff's substitute income including but not limited to earnings from alternative employment.

8. To the extent Plaintiff asserts claims for actions allegedly taken more than 300 days before the filing of IDHR Charge No. 2023SE1707, such claims are barred from recovery as untimely.

9. To the extent that the adverse actions alleged in Plaintiff's Complaint are not like or reasonably related to those alleged in IDHR Charge No. 2023SE1707, they must be dismissed.

10. The claims for negligent hiring and negligent retention are barred by the applicable statute of limitations.

11. Defendants Boozer and Kleber are not proper defendants to Count I of Plaintiff's Complaint because IDHR Charge No. 2023SE1707 names only Defendant Board as a respondent.

3363022.5

Accordingly, Plaintiff has failed to exhaust her administrative remedies with respect to Defendants Boozer and Kleber.

12. Defendants Boozer and Kleber are not proper defendants to Count III of Plaintiff's Complaint because the torts of negligent hiring and negligent retention may only be brought against an employer, here, Defendant Board.

Respectfully submitted,

CHAMPAIGN COMMUNITY UNIT SCHOOL DISTRICT NO. 4, BOARD OF EDUCATION OF CHAMPAIGN COMMUNITY UNIT SCHOOL DISTRICT NO. 4, SHELIA BOOZER, and KEN KLEBER, Defendants.

By: /s/ Tracey L. Truesdale (ARDC 6207891)
One of Their Attorneys

Caroline K. Kane
ckk@franczek.com
Tracey L. Truesdale
tlt@franczek.com
Hailey M. Golds
hmg@franczek.com
FRANCZEK P.C.
300 S. Wacker Drive
Suite 3400
Chicago, IL 60606
(312) 986-0300

Dated: October 29, 2024

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this 29th day of October, 2024, she caused a true and correct copy of the foregoing **DEFENDANTS' ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES** to be filed with the Clerk of the Court using the CM-ECF Filing system which electronically serve a copy upon the following counsel of record:

>Jamie S. Franklin
>C-K Law Group
>565 West Adams Street
>Suite 600
>Chicago, IL 60661
>Jfranklin5@kentlaw.iit.edu

>/s/ Tracey L. Truesdale
>tlt@franczek.com