E-FILED
Wednesday, 18 March, 2026  02:22:21 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| KATINA WILCHER,<br><br>*Plaintiff,*<br><br>v.<br><br>CHAMPAIGN UNIT 4 SCHOOL DISTRICT,<br>the BOARD OF EDUCATION OF<br>CHAMPAIGN UNIT 4 SCHOOL DISTRICT,<br>SHEILA BOOZER, and KEN KLEBER,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)    Case No. 2:24-cv-02240-CSB-EIL<br>)<br>)    Jury Trial Demand<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>SECOND AMENDED COMPLAINT[1]</u>

The plaintiff, Katina Wilcher, by her counsel, brings the following Second Amended

Complaint against defendants Champaign Unit 4 School District and the Board of Education of

Champaign Unit 4 School District for violation of the Illinois Human Rights Act, Title VII of the

Civil Rights Act and the Family and Medical Leave Act.

## <u>THE PARTIES</u>

1.     The plaintiff, Katina Wilcher, is a Black female who is 51 years old. She began

working for CSD

2.     in August 2001 as a School Social Worker. In October 2017, she was promoted

to Director of Student, Family, and Community Engagement. In July 2021, she was promoted to

Director of Leading Individuals and Families to Transformation ("LIFT"). On April 24, 2023,

after engaging in protected activity, Ms. Wilcher was demoted to Social Worker, which is her

current role.

---

[1]Plaintiff does not replead Counts I, II, III, and IV as to Boozer and Kleber, or Count VI as to all
Defendants in this Amended Complaint but expressly reserves the right to challenge their dismissal on
appeal.

3.      Defendant Champaign Unit 4 School District ("CSD") is a large public school district serving approximately 10,000 students at 24 schools and programs in grades Pre-K through 12 in Champaign County, IL.

4.      Defendant Board of Education of CSD ("the Board") is an elected board of directors that, among other things, makes employment decisions regarding hiring.

5.      Defendant Sheila Boozer is the Superintendent of CSD, who, among other things, makes employment recommendations and decisions regarding hiring.

6.      Defendant Ken Kleber is the Assistant Superintendent of Human Resources and Organizational Effectiveness for CSD, who, among other things, makes employment recommendations and decisions regarding hiring.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

8.      This Court has supplemental jurisdiction over the Illinois state law claims pursuant to 28 U.S.C. § 1367(a).

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

10.     Prior to bringing this lawsuit, the plaintiff exhausted her administrative remedies, having filed the following charges of discrimination:

- IDHR Charge No. 2022SF1357, filed on June 13, 2022, alleging sex, race, and age discrimination, retaliation, and hostile work environment;

- IDHR Charge No. 2022CF2130, filed on November 4, 2022, alleging retaliation; and

- IDHR Charge No. 2023SE1707, filed on May 23, 2023, alleging retaliation.

2

11.     The IDHR issued a Notice of Dismissal for Lack of Substantial Evidence on April 9, 2024. The EEOC issued a Notice of Dismissal and Right to Sue on September 26, 2024. The plaintiff brought this case within 90 days of receiving the IDHR Notice of Dismissal and filed her First Amended Complaint within 90 days of receiving the EEOC Notice of Dismissal.

### FACTUAL BASIS OF CLAIMS

12.     CSD hired Katina Wilcher in August 2001 as a School Social Worker.

13.     In October 2017, she was promoted to Director of Student, Family, and Community Engagement.

14.     In July 2021, she was promoted to Director of the Leading Individuals and Families to Transformation ("LIFT").

15.     As director of LIFT, Ms. Wilcher earned an annual salary of $106,000.00 and was eligible for a 4% annual increase.

16.     Approximately 20 years ago, Ms. Wilcher was in a relationship with Scott Savage, who was working as a teacher at a CSD school at the time of their relationship.

17.     Mr. Savage subjected Ms. Wilcher to severe physical and emotional abuse and stalked her at home and work. The relationship ended in 2003.

18.     Mr. Savage was dismissed from CSD and left to teach elsewhere for several years, but he was hired back as a teacher and Dean of Students at CSD's Centennial High School in 2000. In 2006, after an order of protection was filed against him by his current girlfriend, he again left Centennial to teach elsewhere.

19.     Two other women also sought orders of protection against Mr. Savage during the same time period.

20. In April 2022, Ms. Wilcher learned that Scott Savage was one of two finalists for the position of Principal of CSD's Centennial High School.

21. Ms. Wilcher was often at Centennial because she ran a student support group there. She also regularly met with all of the principals of CSD's schools.

22. Ms. Wilcher immediately contacted CSD's Director of Human Resources, Dan Casillas, and told him in a phone call that she had concerns about Savage, that he had been abusive to her when they were in a relationship, and that it was extremely upsetting to her that Savage could be returning to CSD.

23. That same day, Ms. Wilcher was called into a meeting with defendants Savage and Kleber. She told them that Savage had abused her when they were in a relationship and that she did not believe it was appropriate for him to be considered for Principal of a school.

24. Kleber and Boozer dismissed her concerns and interrogated her, stating that they were fully vetting Savage by doing background checks and reference checks. They told her that Savage was their top candidate.

25. Ms. Wilcher engaged in protected activity in bringing the abuse to the attention of CSD.

26. In April 2022, CSD hired Scott Savage as Principal of Centennial High School, with full knowledge of his history of allegedly abusing women.

27. In April 2022, Ms. Wilcher received a message from a district administrator saying they were thinking of her and were sorry that she had to go through this experience.

28. Ms. Wilcher requested that she not be required to see or associate with Savage.

29. Defendants required her to attend meetings in which he was present.

4

30.     Defendants planned for these meetings where Savage was present to occur two times a month.

31.     Ms. Wilcher had physiological reactions to the presence of Savage. She became physically ill when he was present.

32.     Ms. Wilcher's immediate supervisor, Angela Ward, called or texted Ms. Wilcher about her whereabouts when she did not attend these meetings where Savage was present, further exacerbating her reactions.

33.     Savage's presence created a hostile and intimidating environment for Ms. Wilcher.

34.     Defendants were aware of Ms. Wilcher's negative reactions to being in Savage's presence but insisted that her role required her to attend these meetings where Savage was present.

35.     After Ms. Wilcher stopped attending these meetings where Savage was present, she began receiving reprimands and her work was constantly scrutinized.

36.     She had to discontinue her group program at Centennial High School.

37.     She suffered extreme emotional distress as a result of his presence.

38.     Ms. Wilcher filed formal complaints with the Illinois Department of Human Rights in June 2022, November 2022, and May 2023, which constitute protected activity.

39.     In December 2022, Ms. Wilcher underwent surgery to repair damage from an earlier serious injury that had limited her mobility. She took leave under the Family and Medical Leave Act ("FMLA") to recover.

40.     While she was on FMLA leave, her immediate supervisor, Angela Ward, refused to allow her to communicate with her coworkers.

41.     In April 2023, while Ms. Wilcher was still recovering and was still on FMLA leave, Ms. Wilcher was called into Kleber's office and was demoted to the role of Social Worker.

42.     Defendants' reason for the demotion – performance issues – is a pretext for retaliation.

43.     Ms. Wilcher's performance reviews have always been positive. She has never been subjected to discipline and has never been placed on a performance improvement plan.

44.     As a Social Worker, Ms. Wilcher's pay decreased from $106,000 to $84,000.00.

45.     Ms. Wilcher was demoted in violation of the Illinois Human Rights Act and the FMLA.

46.     In April 2023, Savage was caught on camera grabbing and getting into a physical altercation with a female student. The footage was aired on the local news, and Centennial parents called for his termination. See https://www.youtube.com/watch?v=-EUbZeG3On8&ab_channel=WCIANews (last visited July 9, 2024).

47.     He resigned in disgrace shortly thereafter.

## COUNT I

**Retaliation in Violation of the
Illinois Human Rights Act,
775 ILCS 5/6-101, *et seq*.
Against CSD and the Board**

48.     Ms. Wilcher realleges each of the paragraphs set forth above.

49.     Under the Illinois Human Rights Act, it is a violation to:

[r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment, sexual harassment in elementary, secondary, and higher education, or discrimination based on arrest record, citizenship status, or work authorization status in employment under Articles 2, 4, 5, and 5A, because

6

he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act, or because he or she has requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by this Act . . . 775 ILCS 5/6-101(Q).

50.     As described above, Ms. Wilcher engaged in protected activity by opposing and reporting conduct by defendants that she reasonably believed was unlawful under the IHRA.

51.     After she complained, the defendants continued the same course of action.

52.     After she complained, the defendants retaliated against her by, among other things, forcing her to work with her abuser and demoting her.

53.     Defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Wilcher's rights. Exemplary damages are warranted to prevent similar unlawful conduct by defendants.

54.     Ms. Wilcher was damaged by the defendants' conduct.

## COUNT II

**Discrimination and the Imposition of a
Hostile Work Environment in Violation of the
Illinois Human Rights Act,
775 ILCS 5/6-101, *et seq*.
Against CSD and the Board**

55.     Ms. Wilcher realleges each of the paragraphs set forth above.

56.     Under the Illinois Human Rights Act, it is a violation:

"for any employer to refuse to hire, to segregate, to engage in harassment . . . or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102(A).

57.     As alleged above, the defendants violated the IHRA by creating and/or permitting the creation of a hostile, offensive, or intimidating work environment based on sex.

7

58.    Plaintiff filed an IDHR Charge (Charge No. 2022SF1357) against CSD on June 13, 2022, alleging discrimination based on sex, race, and age, retaliation, and hostile work environment.

59.    Defendants were aware of Ms. Wilcher's past experiences with Savage and were aware of how Ms. Wilcher was affected by those past experiences.

60.    On April 1, 2022, Plaintiff complained to Boozer and Kleber about Savage, at this point a potential candidate for hire, about his abusive conduct towards her in the past. She stated that she feared for her safety if she encountered him at work.

61.    On April 4, 2022, Plaintiff filed a complaint with HR.

62.    On April 5, 2022, Plaintiff met with Boozer to reiterate her concerns regarding the possibility of Savage's employment and to reiterate her concerns should Savage be hired. She reiterated that she was concerned for her safety.

63.    Plaintiff learned of Savage's hire at an April 11, 2022, administrative board meeting.

64.    Shortly after Savage's hire, Defendants began to scrutinize Ms. Wilcher's work even more, and continuously asked her about her whereabouts despite their knowledge of Ms. Wilcher's inability to be in Savage's presence.

65.    Plaintiff again reiterated that she would not attend in-person meetings with Savage as she feared for her safety since, fearing she would be unable to protect herself against Savage should he turn aggressive.

66.    Defendants insisted that it was a job requirement for Ms. Wilcher to work with Savage on a semi-regular basis.

67.    Plaintiff filed her second IDHR Charge (Charge No. 2022CF2130) regarding this matter, claiming a hostile work environment due to retaliation, stating that the retaliatory event was CSD hiring Savage after she filed her first IDHR charge against CSD.

68.    On April 24, 2023, Plaintiff was demoted to a lower position.

69.    The demotion constitutes clear retaliation for filing the prior charges.

70.    Plaintiff filed her third and most recent IDHR Charge of discrimination (Charge No. 2023SE1707) on May 23, 2023, which, while only specifying retaliation in the "discrimination based on" section, is clearly a reflection of the hostile work environment based on the defendants' retaliation after she filed each IDHR charge.

71.    There is a pattern of discrimination that started as early as 2021 and has continued until Ms. Wilcher took a leave of absence from her employment.

72.    Ms. Wilcher was damaged by the defendants' conduct.

### COUNT III

**Retaliation in violation of the
Title VII of the Civil Rights Act of 1964,
*as amended*, 42 U.S.C. §§ 2000e, *et seq*.
Against CSD and the Board**

73.    Ms. Wilcher realleges each of the paragraphs set forth above.

74.    Title VII prohibits employers from retaliating against anyone who engages in protected activity, including by opposing conduct reasonably believed to be unlawful under Title VII or by participating in an employer's internal investigation into allegations of conduct reasonably believed to be unlawful under Title VII.

75.    The defendant was an "employer" within the meaning of Title VII, and the plaintiff was an "employee" within the meaning of Title VII.

9

76.     After Ms. Wilcher complained to the defendants about Savage's abusive treatment of her, the defendants went ahead with their plans to hire Mr. Savage.

77.     After she complained, the defendants retaliated against her by, among other things, forcing her to work with her abuser on a semi-regular basis, subjecting her work to new scrutiny and eventually demoting her.

78.     Because Ms. Wilcher's employment conditions were significantly altered after she reported Savage's past abuse of her, Ms. Wilcher has suffered an adverse employment action.

79.     The defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Wilcher's federally protected rights. Exemplary damages are warranted to prevent similar unlawful conduct by the defendants.

80.     Ms. Wilcher was damaged by the defendants' conduct.

**COUNT IV**

**Discrimination and Imposition of a
Hostile Work Environment in Violation of
Title VII of the Civil Rights Act of 1964,
*as amended*, 42 U.S.C. §§ 2000e, *et seq*.
Against CSD and the Board**

81.     Ms. Wilcher realleges each of the paragraphs set forth above.

82.     Title VII prohibits employers from denying employees equal employment opportunities with respect to terms, conditions, benefits, or privileges of employment based on their sex or gender whether intentionally or unintentionally.

83.     As alleged above, the defendants denied Ms. Wilcher the equal terms, conditions, benefits, or privileges of employment because of her sex or gender.

84.     As alleged above, the defendants hired Ms. Wilcher's abuser and required her to work with her abuser and allowed a hostile work environment to be created and perpetuated.

85.     In early 2022, Plaintiff became aware that CSD was considering her past abusive partner, Savage, for a position at CSD.

86.     On April 1, 2022, Plaintiff met with Boozer and Kleber to explain her concerns about Savage, stating that Savage had subjected her to domestic abuse in the past when they were in a relationship.

87.     On April 4, 2022, Plaintiff filed a complaint with HR.

88.     On April 5, 2022, Plaintiff again expressed to Boozer in a meeting about her concerns, again stating she feared for her safety due to Savage's past domestic abusive behavior towards her.

89.     On April 11, 2022, Plaintiff became aware that Savage was hired, and that she would be required to attend meetings and work with Savage.

90.     Kleber acknowledged Plaintiff's concerns, stating that CSD would create a mitigation plan to avoid contact between Plaintiff and Savage; however, Plaintiff was forced to see Savage in person almost monthly.

91.     On April 24, 2023, Plaintiff was demoted to a lower position.

92.     Plaintiff filed an EEOC charge of discrimination (Charge No. 21BA30051) on May 2, 2022, alleging the facts above.

93.     Plaintiff again filed an EEOC charge of discrimination (Charge No. 440-2023-05048) on May 23, 2023, alleging the facts above and stating that Savage had such a history of propensity towards violence that he was known in the community for his violence against others, especially women.

11

94.    Plaintiff was put in harm's way due to her gender.

95.    The best course of action to ensure her safety was to avoid confrontations with Savage, as such confrontations had previously become dangerous for her.

96.    As a result of her inability to attend meetings with Savage, Plaintiff was disciplined, even though CSD was fully aware of the reasons she did not feel safe around Savage.

97.    Bring forced to be in close proximity to Savage, and the constant fear that he could be in the building without her prior knowledge, caused Plaintiff severe stress.

98.    CSD did not offer any adequate solution to this matter, and instead caused Plaintiff to fear for her safety until Savage was fired after physically assaulting a female student.

99.    Ms. Wilcher's sex or gender caused the defendants' conduct. In the alternative, Ms. Wilcher's sex or gender were motivating factors in the defendants' conduct towards her.

100.    There is a pattern of discrimination based on gender since April 2022, which has systematically continued until Ms. Wilcher took a leave of absence.

101.    Defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Wilcher's rights. Exemplary damages are warranted to prevent similar unlawful conduct by defendants.

102.    Ms. Wilcher was damaged by the defendants' conduct.

### <u>COUNT V</u>

**Violation of the FMLA and
Retaliation in violation of the FMLA,
29 U.S.C. §§ 2601, *et seq.*
Against CSD and the Board**

103.    Ms. Wilcher realleges each of the paragraphs set forth above.

12

104. The FMLA, 29 U.S.C. § 2615(a)(1), makes it unlawful for employers "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title [29 USCS §§ 2611, et seq.]."

105. Further, the FMLA, 29 USC § 2615(a)(2), makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by it.

106. An employee who returns from FMLA leave is entitled to be restored to the same or an equivalent job with equivalent pay, benefits, and other terms and conditions of employment.

107. Defendant CSD is an "employer" within the meaning of the FMLA, and Ms. Wilcher is an "employee" within the meaning of the FMLA.

108. Defendants demoted Ms. Wilcher while she was on FMLA leave.

109. Defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Wilcher's rights. Exemplary damages are warranted to prevent similar unlawful conduct by defendants.

110. Ms. Wilcher was damaged by the defendants' conduct.

### DEMAND FOR JURY TRIAL

Ms. Wilcher demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Katina Wilcher, prays for relief from the defendants as to all counts of her Complaint as follows:

A. Payment of Ms. Wilcher's lost past and future wages and benefits, including lost retirement contributions, reduction in pension payments, vacation and sick time, and raises;

13

B.      Compensatory damages, emotional and mental distress damages, punitive

damages, statutory damages, liquidated damages, interest, and civil penalties;

C.      Payment of Ms. Wilcher's attorneys' fees and all costs of litigation, including

statutory fees and expert witness fees;

D.      Pre- and post-judgment interest; and

E.      All other relief, whether legal or equitable, that this Court may deem appropriate.

Respectfully submitted this __ day of December 2025

*/s Jamie S. Franklin*
Jamie S. Franklin
C-K Law Group
565 West Adams Street, Suite 600
Chicago, IL 60661
(312) 906-5048 (direct)
(773) 696-1478 (fax)
(312) 498-5143 (mobile)
jfranklin5@kentlaw.iit.edu