E-FILED
Wednesday, 15 July, 2026 10:07:41 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| **KATINA WILCHER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CHAMPAIGN UNIT 4 SCHOOL DISTRICT, et al.,**<br><br>**Defendants.** | **Case No. 24-2240** |

**ORDER**

Before the Court are three motions. The first is the Motion to Dismiss Based on Plaintiff's Failure to Prosecute and Comply in Discovery (#44) filed by Defendants Champaign Unit 4 School District ("the District") and the Board of Education of Champaign Unit 4 School District ("the Board," and together with the District, "Defendants"). The second is Plaintiff's Motion to Compel (#43). The third is the Motion for Extension of Time (#45) filed by Plaintiff Katina Wilcher ("Plaintiff").

## I. Background

Plaintiff is a current employee for the District. She began working for the District in August 2001 as a School Social Worker. In October 2017, she was promoted to Director of Student, Family, and Community Engagement. In July 2021, she was promoted to Director of Leading Individuals and Families to Transformation. On April 24, 2023, she was demoted to Social Worker, which is her current role.

Plaintiff filed the present lawsuit on October 22, 2024.[1] Plaintiff alleges Defendants created a hostile work environment and retaliated against her under Title VII and the Illinois Human Rights Act ("IHRA") by, among other things, hiring and retaining Scott Savage and by demoting her when she engaged in protected activity. Plaintiff also alleges

[1] Plaintiff's original Complaint brought claims against the District, the Board, Shelia Boozer, and Kenneth Kleber. Plaintiff's Second Amended Complaint only brings claims against the District and the Board.

Defendants violated and retaliated against her in violation of the Family Medical Leave Act ("FMLA").

Plaintiff alleges that from 2001-2003, she was in a relationship with Savage while they were both employed at different schools in the District. According to Plaintiff, Savage severely physically and emotionally abused her and stalked her at home and work until the relationship ended in 2003. Savage was employed by the District until 2006, when he left the District's employment.

In April 2022, Plaintiff learned the District was considering Savage for the role of Principal at Centennial High School. Plaintiff alleges she was concerned that hiring Savage would result in her having regular and sustained contact with him. She brought her concerns to Shelia Boozer and Kenneth Kleber. At the time, Boozer was the Superintendent of the District and Kleber was the Assistant Superintendent of Human Resources and Organizational Effectiveness. Plaintiff states that she told Boozer and Kleber that Savage had abused her when they were in a relationship and that she did not believe it was appropriate to consider him for Principal. Plaintiff alleges they were largely dismissive, interrogated her, and informed her they were fully vetting Savage by doing background and reference checks and that he was their top candidate.

In April 2022, the District hired Savage as Principal. Plaintiff alleges Defendants hired him with full knowledge of his history of allegedly abusing women. Also in April 2022, Plaintiff received a message from a district administrator saying they were thinking of her and were sorry that she had to go through this experience.

According to Plaintiff, she requested that she not be required to see or associate with Savage, but Defendants required her to attend meetings in which he was present and planned these meetings to occur two times per month. Plaintiff alleges that she had physiological reactions to Savage's presence and became physically ill when he was present. Plaintiff claims that her immediate supervisor, Angela Ward, called or texted her about her whereabouts when she did not attend those meetings where Savage was present, further exacerbating her reactions.

Plaintiff alleges that Defendants were aware of her negative reactions to being in Savage's presence but insisted that her role required her to attend these meetings. After Plaintiff stopped attending meetings where Savage was present, she alleges that she began receiving reprimands and her work was constantly scrutinized. According to Plaintiff's Second Amended Complaint, Plaintiff filed formal complaints with the Illinois Department of Human Rights ("IDHR") in June 2022, November 2022, and May 2023.

In December 2022, Plaintiff alleges that she underwent surgery to repair damage from an earlier serious injury that had limited her mobility. She took leave under the FMLA to recover. While she was on FMLA leave, Plaintiff claims that Ward refused to allow her to communicate with her coworkers.

In April 2023, while Plaintiff was still recovering and on FMLA leave, Plaintiff alleges that she was called into Kleber's office and demoted to the role of Social Worker. Defendants' reason for the demotion was performance issues. Plaintiff alleges her performance reviews have always been positive and that she has never been subjected to discipline and has never been placed on a performance improvement plan. As a School Social Worker, Plaintiff states that her pay decreased from $106,000.00 to $84,000.00.

Also in April 2023, Savage was caught on camera grabbing and getting into a physical altercation with a female student. The footage was aired on the local news. Savage resigned shortly after.

Plaintiff's Amended Complaint originally asserted six causes of action: retaliation in violation of the IHRA and Title VII (Counts I and III), discrimination and hostile work environment in violation of the IHRA and Title VII (Counts II and IV), violation of the FMLA and retaliation in violation of the FMLA (Count V), and negligent hiring and retention (Count VI).

Defendants moved to partially dismiss the Amended Complaint. The District Court granted Defendants' motion. Counts I, II, III, and IV were dismissed with prejudice as to Boozer and Kleber. Count VI was dismissed with prejudice as to all Defendants. Counts II and IV were dismissed without prejudice as to the District and the Board. Regarding Plaintiff's discrimination and hostile work environment claims specifically,

the District Court found they were not "like or reasonably related" to the allegations of her May 2023 charge to the IDHR, which only alleged retaliation. Count V survived.

Plaintiff moved to file a second amended complaint, seeking to re-allege her discrimination and hostile work environment claims (Counts II and IV). Plaintiff stated she filed two earlier charges before the March 2023 IDHR charge. According to Plaintiff, Counts II and IV are "like or reasonably related" to the allegations of the first, second, and third charges. This Court allowed Plaintiff's Second Amended Complaint (the "Operative Complaint"), noting that while the amendment may ultimately be futile, the futility of the amendment was not so obvious at that stage to deny Plaintiff's motion.

Plaintiff's Operative Complaint alleges retaliation in violation of the IHRA and Title VII (Counts I and III), discrimination and hostile work environment in violation of the IHRA and Title VII (Counts II and IV), and violation of the FMLA and retaliation in violation of the FMLA (Count V).

The parties are nearing the end of discovery. On July 12, 2026, the Court entered an amended scheduling order extending discovery to April 30 and the dispositive motions deadline to June 30.

On April 27, Defendants filed the present Motion to Dismiss. The same day, Plaintiff filed the present Motion to Compel. On April 30, Plaintiff filed the present Motion for Extension of Time asking the Court to extend discovery to July 30.

**II. Defendants' Motion to Dismiss**

Defendants' Motion to Dismiss relates to a dispute over Plaintiff's deposition. On March 12, 2026, the parties agreed to hold Plaintiff's deposition on April 3, and Defendants issued a Notice of Deposition for that date. On March 19, however, Plaintiff's counsel asked to reschedule the deposition after Plaintiff informed her that April 3 was Good Friday, which is a religious holiday for her.

Defense counsel agreed to find a new date and proposed additional dates. Plaintiff's counsel was unavailable on those dates and proposed April 16. That date did not work for defense counsel, and Plaintiff's counsel then provided defense counsel with available dates of April 13, 14, 21, 28, and 30. Defense counsel asked to confirm April 13.

Plaintiff's counsel stated he was now unavailable on April 13 but any other date on the list would work. Defense counsel issued an Amended Notice of Deposition for April 14.

On April 13, a day before Plaintiff's scheduled deposition, Plaintiff asked to discuss Defendants' previous settlement offer and postpone Plaintiff's deposition. Defense counsel responded, "We will agree to postpone, but we do not want to push this along much further given the discovery deadline in place. Can we agree that if we do not reach settlement, we will move forward with her deposition on April 22?" (#44, Ex. 5). Plaintiff's counsel replied, "Yes, that will work. Thank you." *Id.* After speaking further, the parties did not agree to seek a settlement conference. Defense counsel informed Plaintiff's counsel that "we intend to move forward with [Plaintiff's] deposition on April 22" and issued another Amended Notice of Deposition for April 22.

Subsequently, Plaintiff's counsel informed defense counsel that April 22 would not work for Plaintiff and proposed six dates in May. Defense counsel responded:

> "We already moved plaintiff's deposition multiple times. We agreed to postpone her deposition on April 14 only if plaintiff would be available for her deposition on April 22. You confirmed that this date would work, and we do not agree to postpone this any longer. The current discovery deadline is April 30. We must complete all three depositions by this date. Please confirm that Ms. Wilcher will attend her deposition on April 22."

(#44, Ex. 7). Plaintiff's counsel replied that he would not produce Plaintiff for her deposition on April 22 and would file a motion to extend the discovery deadline.

Defense counsel did not agree to postpone Plaintiff's deposition beyond the discovery deadline and asked Plaintiff's counsel to provide dates prior to April 30 for Plaintiff's deposition. Plaintiff's counsel responded again that he would seek additional time to complete the depositions. In addition, Plaintiff's counsel stated that he would be filing a motion to compel on Plaintiff's Document Requests 16-20, which were the subject of Rule 37 letters culminating in Defendants' refusal to produce the documents.

Defense counsel did not agree to extend discovery, sent an Amended Notice of Deposition for April 27, and offered April 29 or 30 as alternative dates. As to the Document Requests, defense counsel stated they had responded to the Rule 37 letter

seven months prior on September 2, 2025. Defense counsel provided the Zoom information in anticipation of Plaintiff's deposition scheduled for April 27, 2026.

After receiving the Zoom information, Plaintiff's counsel emailed defense counsel stating: "we did not agree to this date and I nor my client is available. Please stop the games with respect to this deposition. I am going to file a motion to extend discovery and schedule the deps in May. I would appreciate it if you would cease making unilateral scheduling decisions." (#44, Ex. 9).

Defense counsel responded:

> This is not a game. The court set a discovery deadline and the District is attempting to abide by that deadline. As I stated in my last email, we have attempted to work with you to find a mutually agreeable date. You have repeatedly failed to provide me with one, despite the multiple dates I have given you. Discovery closes April 30th. As I understand your email, your client will not make herself available for her deposition prior to that date, even though I provided her with the alternative dates of April 29th and April 30th if April 27th did not work. Please confirm your client's position and her basis for asserting that she is unavailable on the dates I provided so that we can move forward with seeking court intervention if necessary.

*Id.* Plaintiff's counsel replied that "none of those April dates work for us. I am in the process of getting a slate of May dates from Ms. Wilcher. We will file a motion, as stated before."

Subsequently, Defendants filed the present Motion to Dismiss. Plaintiff then filed her Response, stating that after Defendants filed their Motion, the parties agreed to schedule Plaintiff's deposition for May 8.

Defendants argue the Court should dismiss this case with prejudice because Plaintiff failed to make herself available for her deposition prior to the close of discovery and failed to timely prosecute her case. Plaintiff responds that sanctions are unwarranted since Plaintiff's deposition was mutually rescheduled and the dispute has been resolved.

Under Federal Rule of Civil Procedure 37, a complaint may be dismissed as a sanction if a party "fails to obey an order to provide or permit discovery" or fails to appear for their deposition after being served with proper notice. Fed. R. Civ. P.

37(b)(2)(A)(v), 37(d)(1)(A)(i)-(ii). However, the sanction must "be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000). "Of all possible sanctions, dismissal is considered draconian." *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003). Entry of dismissal for a litigant's failure to cooperate in the discovery process requires a showing of willfulness, bad faith, or fault on the part of the non-moving party. *Id*. To apply the sanction of dismissal, the court must first consider and explain why lesser sanctions would be inappropriate. *See Long*, 213 F.3d at 986.

In addition, Rule 41(b) provides, "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). The Seventh Circuit has held that actions can be dismissed "when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Williams v. Chicago Bd. of Educ.,* 155 F.3d 853, 857 (7th Cir. 1998).

The Court finds that sanctions are not warranted under Rule 37(d), Rule 37(b), or Rule 41(b). Defendants cite cases affirming the sanction of dismissal after the plaintiffs in those cases repeatedly failed to appear for deposition. But, here, Plaintiff did not repeatedly fail to appear. The first two noticed depositions were rescheduled by mutual agreement before the deposition date arrived. As for the third noticed deposition for April 22, Plaintiff's counsel originally agreed to that date but later informed defense counsel that Plaintiff was unavailable and proposed dates in May. Defense counsel would not agree to a May date since the discovery deadline was April 30 and sent a fourth Notice of Deposition for April 27, to which Plaintiff's counsel did not agree.

Each deposition date was either rescheduled by agreement before it occurred or withdrawn with advance notice and replacement dates offered before the noticed date. It does not appear that defense counsel attended any of the noticed depositions. On these facts, Defendants have not shown that Plaintiff "failed to appear" for a deposition pursuant to Rule 37(d). *See Gee v. City of Chicago Pub. Schs.*, 2002 WL 1559704, at *2 (N.D. Ill. July 12, 2002) (finding Rule 37(d) provided no basis to sanction the plaintiff when the

defendant agreed to postpone the plaintiff's deposition at her request and when the plaintiff then expressed her intent not to be deposed). In addition, Plaintiff reports that after Defendants filed their Motion, the parties agreed to depose Plaintiff on May 8, which should have already taken place.

Based on the information before this Court, Plaintiff did not fail to diligently prosecute her case or cooperate in the discovery process. While Plaintiff's counsel's actions could have been timelier, there is no showing of willfulness or bad faith. Therefore, Defendants' Motion to Dismiss is denied.

Defendants ask the Court to order Plaintiff to pay Defendants' reasonable expenses, including attorney's fees, incurred in filing their Motion. Rule 37(d) provides that if a party fails, after being served with proper notice, to appear for their deposition, the court "must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by that failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). As noted above, Defendants did not establish that Plaintiff "failed to appear" within the meaning of Rule 37(d). Therefore, Defendants' request for attorney's fees and expenses is denied.

**III. Plaintiff's Motion to Compel**

On November 22, 2024, Plaintiff served her First Set of Document Requests. Defendants served their responses on February 6, 2025. For Requests 16-20, Defendants either objected or stated that they would make certain documents available after the entry of a protective order, while withholding the remainder of the responsive documents.

On July 2, 2025, Plaintiff sent a Rule 37 letter identifying alleged deficiencies in Defendants' production and requesting supplementation. On September 2, 2025, Defendants responded to Plaintiff's requests in writing. According to Plaintiff, Defendants refused to supplement their production and went back on their offer to produce certain documents after the entry of a protective order, which was entered on August 25, 2025 (*See* #23). According to Defendants, however, they included a supplemental production with their response. Defendants stated their position with

respect to each issue identified by Plaintiff and stated "we believe that this response should resolve all alleged issues raised in your letter dated July 7, 2025. However, we are available to discuss further if needed."

Plaintiff did not respond to Defendants' letter and did not discuss any outstanding discovery issues with defense counsel prior to filing her motion to compel. On April 22, 2026, seven months after Defendants submitted their letter responding to the outstanding discovery requests and days prior to the close of discovery, Plaintiff's counsel emailed defense counsel regarding Plaintiff's deposition. In that email, Plaintiff's counsel stated, "I want to follow up once more on our Document Requests, 16, 17, 18, 29, and 20. These were the subject of Rule 37 letters culminating in your refusal to produce the documents. We will be filing a motion to compel on these requests. Let me know if your position changes." Defendants responded by noting that they responded to the letter seven months ago. Plaintiff filed her Motion to Compel without any further discussion with Defendants regarding the discovery dispute.

Federal Rule of Civil Procedure 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …. Information within this scope of discovery need not be admissible in evidence to be discoverable." In addition, Rule 37(a) provides:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a)(1).

"The requirement to meet-and-confer must be taken seriously, as 'before the court can rule on a motion, the parties must demonstrate they acted in good faith to resolve the issue among themselves.'" *Design Basics, Inc. v. Granite Ridge Builders, Inc.*, 2007 WL 1830809, *1 (N.D. Ind. June 21, 2007) (quoting *Robinson v. Potter*, 453 F.3d 990, 994-95 (8th Cir. 2006)). A good faith effort to resolve a discovery dispute "requires that counsel

converse, confer, compare views, consult and deliberate." *Id.* (quoting *Williams v. Bd. of County Comm'rs of Unified Gov't of Wyandotte County and Kansas City, Kan.*, 192 F.R.D. 698, 700 (D. Kan. 2000)).

The district court exercises significant discretion in ruling on a motion to compel. *Gile v. United Airlines*, 95 F.3d 492, 495-496 (7th Cir. 1996). It may grant or deny the motion in whole or in part. *Id.* "The party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Peppers v. Credit One Bank, N.A.*, 2018 WL 8244003 (C.D. Ill. Dec. 21, 2018) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

The Court finds that Plaintiff failed to meet and confer in good faith prior to filing her Motion to Compel. Over seven months ago, Plaintiff sent a Rule 37 letter to Defendants. Defendants responded, stating "we believe that this response should resolve all alleged issues raised in your letter dated July 7, 2025. However, we are available to discuss further if needed." Plaintiff never responded. As far as Defendants knew, the meet and confer letter had been successful.

Months later, during a dispute over Plaintiff's deposition, Plaintiff stated she would be filing a motion to compel. Defense counsel noted they had responded to the Rule 37 letter seven months prior on September 2, 2025. It was then Plaintiff's obligation to continue the meet and confer process in good faith until it was clear that the parties were at an impasse. Instead, Plaintiff ended the process and filed her Motion.

The parties were still consulting and deliberating when Plaintiff filed her Motion. The Rule requires that the movant has conferred *in good faith* with the party failing to make the disclosure. This requires that the parties have conversed, conferred, compared views, consulted, or deliberated about the dispute. *See Design Basics*, 2007 WL 1830809, *1. Plaintiff started this process, went silent for seven months giving the appearance that the dispute was resolved, and then filed her Motion. The Rule requires more than this. Only after making a good faith effort can the movant seek court action under Rule 37.

In addition, "[w]here a party has waited to bring a motion to compel until the eve of a discovery deadline, the court is justified in denying the motion." *Ridge Chrysler Jeep*

*L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C.*, 2004 WL 3021842, at *6 (N.D. Ill. Dec. 30, 2004). Because Plaintiff waited to file her Motion to Compel until three days before the discovery deadline, this alone would justify the Court denying the Motion.

Although Plaintiff failed to meet and confer in good faith and waited until the eve of the discovery deadline to file her Motion to Compel, the Court will rule on the merits to prevent further delay. However, no further motions to compel will be entertained.

Moving to the merits, Plaintiff asks the Court to compel Defendants to produce all documents responsive to Requests 16-20.

Request 16 seeks the employee or personnel files of Boozer, Kleber, and Savage. Plaintiff argues she is entitled to Boozer and Kleber's files because they were decision makers in the events leading to Plaintiff's demotion and their files are relevant to their roles, authority, knowledge, and any history of similar conduct toward other employees.

Defendants object that the request is overly broad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of admissible evidence, and designed to harass the named individuals. Defendants argue Plaintiff is not entitled to Boozer and Kleber's personnel files because they are no longer named defendants. In addition, Defendants argue that their position statement identifies Ward—not Boozer and Kleber—as Plaintiff's supervisor who recommended Plaintiff's reassignment, which was then approved by Boozer and recommended to the Board,

"[C]ourts have regularly permitted plaintiffs in employment discrimination cases to discover the personnel files of decision makers." *Speller v. Am. Ass'n of Neurological Surgeons*, 2021 WL 2186182, at *3 (N.D. Ill. May 28, 2021); *Digan v. Euro-Am. Brands, LLC,* 2012 WL 668993, at *5 (N.D. Ill. Feb. 29, 2012) ("[Plaintiff] is entitled to discover the personnel files of the decisionmakers involved in her termination"); *Byers v. Illinois State Police,* 2002 WL 1264004, at *13 (N.D. Ill. June 3, 2002) ("The personnel files of the individuals alleged to have discriminated against the plaintiffs are clearly relevant.")

Plaintiff is entitled to both Boozer and Kleber's personnel files. Boozer approved Ward's recommendation for Plaintiff's reassignment and recommended the reassignment to the Board. Thus, Boozer was a decision maker involved in Plaintiff's

reassignment. As for Kleber, Plaintiff alleges in her Operative Complaint that she was called into Kleber's office and demoted. In addition, Kleber's title and position at the time was Assistant Superintendent of Human Resources and Organizational Effectiveness. This all implies that Kleber was a decision maker involved in Plaintiff's reassignment as well. Therefore, Plaintiff is entitled to both Boozer and Kleber's personnel files.

Plaintiff does not argue that Savage was a decision maker. Instead, Plaintiff argues Savage's file is relevant to the District's decision to hire him and that the information it had about his alleged history of violence when it hired him is core to Plaintiff's claims.

Defendants respond that Savage's file is not core to Plaintiff's claims because the District Court already found that Plaintiff's allegations related to hiring Savage are time barred. In addition, Defendants argue that the hostile work claims relating to Savage's hiring have been dismissed. Further, Defendants argue Plaintiff has not alleged that Savage engaged in an inappropriate behavior directed at her after he was rehired. Defendants argue, therefore, that Savage's file is not relevant.

Savage's personnel file is relevant. Here, Plaintiff claims Savage's presence at the school caused a hostile work environment because she was previously abused by Savage and the District rehired Savage knowing about his alleged history of violence. Savage's file is relevant to establishing the District's knowledge of the alleged risk both before they rehired Savage and throughout his employment. Such knowledge is central to showing employer liability for hostile work environment claims under both IHRA and Title VII. *See King v. The Finish Line, Inc.*, 997 F. Supp. 987, 993 (N.D. Ill. 1998) ("For an employer to be liable under a hostile work environment claim, the plaintiff essentially must first show that the employer knew or should have known of the existence of harassment.").

Although the District Court dismissed Plaintiff's claims of discrimination and hostile work environment, it did so without prejudice. (*See* #24 at 19). Subsequently, Plaintiff filed a Second Amended Complaint reasserting these claims. This Court allowed the Second Amended Complaint, noting that while the claims may ultimately be futile, their futility was not so obvious at this stage to disallow the amended complaint.

Plaintiff's present hostile work environment claims have not been dismissed. Savage's file is relevant to those claims, and Plaintiff is entitled to it.

In sum, Plaintiff is entitled to Boozer, Kleber, and Savage's personnel files. Defendants, however, may redact or withhold particularly sensitive information such as unlisted addresses and telephone numbers, social security numbers, marital status, financial, medical, and insurance information, financial information, and computer passwords. *See Digan*, 2012 WL 668993, at *5. In addition, the personnel files are subject to the governing protective order in this case.

Request 17 seeks all documents related to the April 2023 incident in which Savage was caught on camera in a physical altercation with a female student. Request 18 seeks all documents related to Defendants' decision to hire Savage as Principal in 2022. Request 19 seeks all documents related to Savage's resignation. Defendants object based on relevance.

The Court finds that the documents sought in Requests 17-19 are relevant to Plaintiff's claims. For her retaliation claims, Plaintiff alleges that she engaged in protected activity by opposing and reporting Defendants' conduct and that after she complained, Defendants retaliated against her by forcing her to work with her abuser, scrutinizing her work and whereabouts, and demoting her. As for her discrimination and hostile work environment claims, Plaintiff alleges that Defendants, despite being aware of Savage's history of violence against Plaintiff and other women, created and/or permitted a hostile work environment based on sex by hiring Savage. Plaintiff alleges that Defendants' actions of hiring Savage, scrutinizing her work and whereabouts, insisting she attend meetings with Savage present, and demoting her created a hostile work environment and constitute a pattern of discrimination.

Evidence of the District's knowledge of Savage's alleged history of violence both before it rehired him and during Savage's employment is relevant to whether the District created a hostile work environment and discriminated against Plaintiff by hiring Savage, requiring Plaintiff to attend meetings with him present, and demoting her. Requests 17 and 19 seek information relating to Defendants' knowledge during Savage's

employment. Request 18 seeks information relating to Defendants' knowledge prior to rehiring Savage. Therefore, Plaintiff is entitled to the documents sought in these requests.[2]

Defendants argue that student records are protected by the Illinois School Student Records Act (ISSRA) and the Family Educational Rights and Privacy Act (FERPA). Defendants are directed to redact any student names and identifying information within any documents responsive to Request 17.

Request 20 seeks all documents related to any complaints, lawsuits, or charges brought against Defendants related to Savage. Originally, Defendants objected that the request was overly broad and included documents and information protected by the attorney-client privilege and work product doctrine. Nonetheless, Defendants stated they would produce copies of a Charge of Discrimination filed to the EEOC by Savage against the District as well as the Board's position statement in response once an appropriate protective order was entered.

In later communications, however, Defendants objected to providing Plaintiff with a copy of the EEOC charge or any documents related to that charge on grounds that the litigation between Savage and Defendants was ongoing, such documents are irrelevant to Plaintiff's claims, and to the extent they are protected under the attorney-client privilege and work product protection. As to any other documents, Defendants stated Plaintiff is the only employee who filed a complaint, lawsuit, or charge of discrimination related to Savage, and no other responsive documents were in their possession.

In their Response, Defendants now state that they will provide Savage's EEOC charge of discrimination. They are directed to do so.

As to Defendants' position statement, it is reasonably calculated to lead to relevant evidence, including Defendants' own characterizations of Savage's behavior and character, both at the time of his rehiring and throughout his employment. This is

[2] The parties are reminded that relevance for discovery does not equate to admissibility at trial.

relevant to whether Defendants acted with knowledge of the risk of harm that Savage's presence allegedly caused Plaintiff.

Any claims of attorney-client privilege or work product doctrine protection over the final position statement are waived because Defendants submitted their position statement to the EEOC, which is a third party. *See McCullough v. Fraternal Ord. of Police, Chicago Lodge 7*, 304 F.R.D. 232, 237 (N.D. Ill. 2014) (noting that "[k]nowing disclosure to a third party almost invariably surrenders the privilege."). However, drafts of the position statement and attorney communications about the statement are protected. *See Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 2009 WL 1543651, at *11 (N.D. Ind. June 2, 2009) (finding that drafts of position statements and communications between counsel and client about the EEOC charge were subject to the attorney-client privilege.) Defendants are directed to produce their submitted position statement under the protective order in place.

As to any other responsive documents, Plaintiff states that she is aware that at least two other women obtained orders of protection against Savage prior to his rehiring. Plaintiff argues that documents reflecting these and other complaints are relevant, non-privileged, and discoverable.

Defendants respond that orders of protection against Savage are not "complaints brought against the defendants," and Plaintiff never previously expressed that she was seeking orders of protection within the scope of Request 20 or any other request. This is technically correct. However, this information is relevant to the District's knowledge of Savage's alleged history of violence. Defendants are directed to produce any such orders of protection in their possession under the protective order in place.

Plaintiff seeks attorney's fees and costs incurred in filing the present Motion to Compel. Under Rule 37, if a motion to compel "is granted in part and denied in part, the court … may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). The Court declines to do so.

## IV. Plaintiff's Motion for Extension of Time

Plaintiff's Motion for Extension of Time is granted. All discovery shall be completed by September 30, 2026. The dispositive motions deadline is extended to October 30, 2026. This extension allows the parties to complete any remaining discovery, including the remaining depositions, if they have not yet been completed. No further extensions will be allowed.

Finally, Defendants filed a Motion for Summary Judgment (#51) on June 30, 2026, which was the deadline for filing dispositive motions prior to this Court extending discovery in this Order. Considering the discovery rulings and extensions in this Order, Defendants' Motion for Summary Judgment (#51) is hereby MOOTED. Defendants may either renew their motion for summary judgment or file a new motion for summary judgment by the dispositive motions deadline.

## V. Conclusion

For the reasons discussed above, the Court orders:

1) Defendants' Motion to Dismiss Based on Plaintiff's Failure to Prosecute and Comply in Discovery (#44) is DENIED.

2) Plaintiff's Motion to Compel (#43) is GRANTED in part and DENIED in part. Within 21 days, Defendants are directed to provide the discovery responses as directed in this Order. No fees or costs awarded.

3) Plaintiff's Motion for Extension of Time (#45) is GRANTED. All discovery shall be completed by September 30, 2026. The dispositive motions deadline is extended to October 30, 2026. Final Pretrial Conference is set for February 8, 2027, at 11:00 a.m., before Judge Colin S. Bruce, Courtroom A, Urbana. Jury Trial is set for March 2, 2027, at 9:00 a.m., before Judge Colin S. Bruce, Courtroom A, Urbana.

ENTERED this 15th day of July, 2026.

s/ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE